# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHNSON & JOHNSON and LIFESCAN, INC.,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **H&H WHOLESALE SERVICES, INC. and HOWARD B. GOLDMAN,** <br><br> **Defendants.** | Case No. |

## COMPLAINT

Plaintiffs, Johnson & Johnson ("J&J") and LifeScan, Inc. ("LifeScan") (collectively "Plaintiffs"), for their complaint against H&H Wholesale Services, Inc. ("H&H") and Howard B. Goldman (collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      This is a Complaint for damages and injunctive relief for Defendants' acts of trademark infringement and unfair competition under federal and state law.  Plaintiffs are the source of the well-known and world-renowned ONETOUCH brand blood glucose test strips, which are used with ONETOUCH Blood Glucose meters by diabetics to monitor their blood glucose levels.  Plaintiffs' claims arise from Defendants' unauthorized importation, distribution and/or sale of gray market ONETOUCH test strips ("Gray Market ONETOUCH Test Strips") which are materially different from ONETOUCH test strips designed and authorized to be sold in the United States ("U.S. ONETOUCH Test Strips").  More specifically, Defendants opportunistically import, distribute and/or sell within the United States certain ONETOUCH test strips that are intended to be sold in various countries of the world other than the United States

1

and that are materially different than the ONETOUCH products intended and authorized for sale in the United States.

      2.     The material differences between the Gray Market ONETOUCH Test Strips and the legitimate U.S. ONETOUCH Test Strips are numerous and readily apparent from a cursory review of the products.  These differences include, without limitation:

- A legend included on the side of the Gray Market ONETOUCH Test Strips box that the product is "Not for sale in the U.S."  This legend does not appear on U.S. ONETOUCH Test Strips.

- The Gray Market ONETOUCH Test Strips include a black ONETOUCH branded band across the center of the strip; on the U.S. ONETOUCH Test Strips this band is blue and branded with ONETOUCH ULTRA.

- The Gray Market ONETOUCH Test Strips are packaged in a box and in vials that use different coloring and trade dress than the U.S. ONETOUCH Test Strips.

- The handling and use instructions for the Gray Market ONETOUCH Test Strips use metric measurements rather than the United States measurements used for U.S. ONETOUCH Test Strips.

- Temperatures on the product packaging for the Gray Market ONETOUCH Test Strips are displayed in degrees Centigrade, whereas degrees Fahrenheit are used on U.S. ONETOUCH Test Strips packaging.

- The customer care telephone numbers printed on the box for the Gray Market ONETOUCH Test Strips are foreign numbers that are not generally accessible from the United States,  while United States toll free numbers are used for United States consumers and purchasers of U.S. ONETOUCH Test Strips.

- The Gray Market ONETOUCH Test Strips packaging and instructions contain various European symbols that are unfamiliar to United States consumers.  These symbols are not used with the U.S. ONETOUCH Test Strips.

- The packaging and instructions for the Gray Market ONETOUCH Test Strips use British spellings as opposed to United States English spellings for certain words, for example "hypoglycaemia," "hyperglycaemia," and "haematocrit."

- Plaintiffs do not allow returns of Gray Market ONETOUCH Test Strips in the United States.

- Gray Market ONETOUCH Test Strips are not eligible for marketing or promotional advantages offered by Plaintiffs in the United States.

3.      Many of these material differences raise significant health and safety concerns for diabetic users of the ONETOUCH products.  For example, the lack of a United States customer care line for United States purchasers of Gray Market ONETOUCH Test Strips makes it difficult for purchasers with questions or problems to contact Plaintiffs for assistance.  Likewise, the use of metric measurements, Celsius temperatures, and European symbols and spelling with Gray Market ONETOUCH Test Strips may potentially cause misuse or mishandling by United States purchasers of the gray market products.

4.      In addition, Plaintiffs have no assurance that the Gray Market ONETOUCH Test Strips are shipped and handled under conditions designed to maintain the safety and integrity of the products.

5.      Defendants' unauthorized gray market importation and/or subsequent distribution causes, or is likely to cause, consumer confusion, mistake and/or deception to the detriment of Plaintiffs, as well as to the detriment of the consumers and purchasers of the Gray Market ONETOUCH Test Strips in the United States.  Purchasers and consumers in the United States have come to expect a certain quality, packaging, appearance and overall image for the U.S. ONETOUCH Test Strips as a result of Plaintiffs' extensive branding, marketing, sales, and quality control efforts in the United States.  When such purchasers and consumers encounter the Gray Market ONETOUCH Test Strips, which bear certain of Plaintiffs' trademarks but which are materially different from what United States purchasers and consumers expect, they are likely to be confused and, indeed, disappointed.  In addition, because Plaintiffs' products are crucial to the health and well-being of diabetic consumers who rely on the ONETOUCH Test Strips for blood glucose readings, the material differences between Gray Market ONETOUCH Test Strips and U.S. ONETOUCH Test Strips pose a significant health and safety risk to the

unknowing and unsuspecting purchasers of Gray Market ONETOUCH Test Strips.  Further, such
sales of Gray Market ONETOUCH Test Strips cause great damage to Plaintiffs and greatly
damage the goodwill associated with Plaintiffs' valuable trademarks.

6.      Based on this unlawful conduct by Defendants, as set forth further below,
Plaintiffs bring claims of federal trademark infringement under Section 32 of the Lanham Act,
15 U.S.C. §1114(1), federal unfair competition and false designation of origin under Section
43(a) of the Lanham Act, 15 U.S.C. 1125(a), trademark infringement and dilution under the laws
of the Commonwealth of Massachusetts, and unfair and deceptive trade practices under the laws
of the Commonwealth of Massachusetts.  Plaintiffs seek injunctive relief, multiple damages,
recovery of their attorneys' fees and costs and other relief authorized by federal and state law.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under Section 39 of the Trademark Act of 1946 (the
"Lanham Act"), 15 U.S.C. § 1121, under Sections 1331, 1338(a), 1338(b) and 1367 of the
Judicial Code, 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367 and under principles of pendent
jurisdiction.  This Court also has jurisdiction pursuant to 28 U.S.C § 1332 as there is diversity of
citizenship between the parties and the matter in controversy exceeds, exclusive of interest and
costs, the sum of seventy-five thousand dollars.

8.      Defendants are subject to personal jurisdiction in the Commonwealth of
Massachusetts pursuant to the Massachusetts long-arm statute because Defendants have caused
tortious injury to Plaintiffs' trademarks within the Commonwealth; because Defendants practice
the unlawful conduct complained of herein, in part, within the Commonwealth; because the
unlawful conduct complained of herein causes tortious injury, in part, within the
Commonwealth; because the Defendants regularly do or solicit business within the
Commonwealth; because the Defendants regularly and systematically direct electronic activity

into the Commonwealth with the manifest intent of engaging in business within the Commonwealth, including the sale and/or offer for sale of diabetes-related products to internet users within the Commonwealth, as well as, upon information and belief, entry into contracts with residents of the Commonwealth resulting in distribution of Defendants' products in the Commonwealth.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c).

## PARTIES

10.      Plaintiff Johnson & Johnson is a New Jersey corporation having a principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

11.      Plaintiff LifeScan, Inc. is a California corporation having a principal place of business at 1000 Gibraltar Drive, Milpitas, California 95035.

12.      Upon information and belief, Defendant H&H Wholesale Services, Inc. is a Michigan corporation having a principal place of business at 1099 Rochester Road, Troy, Michigan 48083.

13.      Upon information and belief, Defendant Howard B. Goldman, a Michigan resident, is President of H&H Wholesale Services, Inc., resides at 2590 Kent Ridge Court, Bloomfield Hills, Michigan 48301-2276, and is the moving, active and conscious force behind H&H.

## FACTS

14.      J&J is an international pharmaceutical, medical devices and consumer packaged goods company founded in 1886.  Due to its extensive experience over the years, J&J is viewed as a dependable source of high-quality and reliable products.

15.     LifeScan, an operating subsidiary of J&J, is the manufacturer and distributor of the world-renowned, high quality ONETOUCH blood glucose test strips used with ONETOUCH blood glucose meters by diabetics to monitor their blood glucose levels.

16.     Diabetes is a group of diseases characterized by high blood glucose levels that result from defects in the body's ability to produce and/or use insulin.  According the American Diabetes Association, diabetes affects more than 25 million Americans.  Diabetes is a chronic disease that must be managed closely to avoid the risk of serious illness, complications or death.

17.     For over twenty years, LifeScan has revolutionized the ease and convenience with which diabetics can manage and maintain their blood glucose levels, including through use of LifeScan's ONETOUCH blood glucose test strips.

18.     J&J is the owner of incontestable registered federal trademarks appearing on packaging for ONETOUCH test strips, including: LIFESCAN, Reg. No. 1384863, ONETOUCH, Reg. No. 2863393, ONE TOUCH, Reg. Nos. 1484999 and 2710143, and ONE TOUCH ULTRA, Reg. No. 2538658 (collectively, the "ONETOUCH Marks").

19.     LifeScan has spent and continue to spend tens of millions of dollars marketing and promoting in interstate and international commerce ONETOUCH blood glucose test strips packaging in high-quality boxes bearing the ONETOUCH trademarks and trade dress.

20.     In the United States alone, LifeScan's sales of test strips in the last five years have totaled billions of dollars.

21.     LifeScan's ONETOUCH test strips have also enjoyed considerable success worldwide.

22.     As a result of the extensive advertising of ONETOUCH test strips, and the celebrity that ONETOUCH Marks have achieved, blood glucose test strips bearing ONETOUCH

Marks have been and are now recognized by the public and in trade as a distinctive source identifier and as a symbol of high quality and safety.

23.     As is the case with many products, particularly those related to health and safety, there are significant and material differences between the ONETOUCH products sold abroad and those sold in the United States.  Unfortunately, Plaintiffs have experienced a growing problem with opportunistic sellers, like Defendants, offering for sale in the United States ONETOUCH products that are intended for use abroad, including ONETOUCH Test Strips.

24.     This is not the first time that Defendants have been caught misusing the Plaintiffs' trademarks and products.  In 2008, the Defendants were sued by the Plaintiffs in New York federal court for selling ONETOUCH glucose test strips in counterfeit packaging.  The name of that case is *Johnson & Johnson and LifeScan, Inc. v. South Pointe Wholesale, Inc., et al.,* 08 Civ. 1297 (E.D.N.Y.), and the case is pending.

25.     Defendants import, distribute and sell materially different Gray Market ONETOUCH Test Strips intended for sale in foreign countries, and such actions are undertaken by Defendants in the United States and in this District.

26.     The Gray Market ONETOUCH Test Strips sold by Defendants bear the ONETOUCH Marks.  See Exhibit A for photographs of the Gray Market ONETOUCH Test Strips sold by the Defendants.

27.     In addition, the Gray Market ONETOUCH Test Strips sold by Defendants include a product insert that is intended for use only with ONETOUCH Test Strips sold abroad.  See Exhibit B for a copy of the product insert included with Gray Market ONETOUCH Test Strips sold by the Defendants.

28.     Furthermore, the Gray Market ONETOUCH Test Strips sold by Defendants are visually different from U.S. ONETOUCH Test Strips in that the Gray Market ONETOUCH Test Strips are black, whereas legitimate U.S. ONETOUCH Test Strips are blue and the Gray Market ONETOUCH Test Strips use trade dress and product packaging colors that differ significantly from the U.S. ONETOUCH Test Strips.  See Exhibit A for photographs of Gray Market ONETOUCH Test Strips sold by the Defendants and Exhibit C for photographs of U.S. ONETOUCH Test Strips.

29.     The distinguishing characteristics of the Gray Market ONETOUCH Test Strips and material differences from the U.S. ONETOUCH Test Strips include, without limitation, the following:

- A legend, shown below and in Exhibit A, included on the side of the Gray Market ONETOUCH Test Strips box clearly indicates that the product is "Not for sale in the U.S."   The defendants have unilaterally added their own sticker to the packaging advising consumers to change their meter readings, thereby diverting consumers' attention from the notice that the product is "Not for sale in the U.S."



- A black "ONETOUCH" branded band across the center of the strip on the Gray Market ONETOUCH Test Strips.  See Exhibit A.  On U.S. ONETOUCH Test Strips this band is blue and includes the "ONETOUCH ULTRA" brand.  A side-

by-side comparison of Gray Market ONETOUCH Test Strips sold by Defendants with U.S. ONETOUCH Test Strips is shown below (see also Exhibits A and C):

| Gray Market ONETOUCH Test Strips | U.S. ONETOUCH Test Strips |
|---|---|
| | |

- The Gray Market ONETOUCH Test Strips are packaged in a box and in vials that use different coloring and trade dress than the U.S. ONETOUCH Test Strips.  A side-by-side comparison of a Gray Market ONETOUCH Test Strip box and vial sold by Defendants and a U.S. ONETOUCH Test Strip box and vial is shown below (see also Exhibits A and C):

| Gray Market ONETOUCH Test Strips | U.S. ONETOUCH Test Strips |
|---|---|



| Gray Market ONETOUCH Test Strips | U.S. ONETOUCH Test Strips |
|---|---|
|  |  |

- The handling and use instructions for the Gray Market ONETOUCH Test Strips primarily use metric measurements.  <u>See</u> Exhibit B.

- Temperatures on the product packaging for the Gray Market ONETOUCH Test Strips are expressed in degrees Centigrade.  <u>See</u> Exhibit A.

- The customer care telephone numbers printed on the box for the Gray Market ONETOUCH Test Strips are foreign telephones numbers using exchanges located outside of the United States.  <u>See</u> Exhibits A and B.  For the U.S. ONETOUCH Test Strips, the product packaging and inserts include a United States toll free telephone number.  <u>See</u> Exhibits C and D.

- The Gray Market ONETOUCH Test Strips packaging and instructions contain various European symbols that are unfamiliar to United States consumers.  <u>See</u> Exhibits A and B.

- The packaging and instructions for the Gray Market ONETOUCH Test Strips use British spellings as opposed to United States English spellings for certain words, for example "hypoglycaemia," "hyperglycaemia," and "haematocrit."  <u>See</u> Exhibit B.

- Plaintiffs do not allow returns of Gray Market ONETOUCH Test Strips in the United States.

- Gray Market ONETOUCH Test Strips are not eligible for marketing or promotional advantages offered by Plaintiffs in the United States.

30.    Furthermore, the Defendants' shipping standards, temperature controls and

removal of expired product are outside of Plaintiffs' control.  Therefore, a consumer may

encounter expired or mishandled Gray Market ONETOUCH Test Strips and wrongfully attribute

the sale of such product to Plaintiffs.  For example, attached hereto as Exhibit E is a letter to the

Defendants from the FDA dated March 27, 2012 which indicates that the ONETOUCH glucose

test strips and other products sold by the Defendants may be "adulterated" under the Federal

Food, Drug and Cosmetic Act.

31.     Overall, these material differences can create an impression among United States

consumer of a strange, low quality or different product from the product they expect to encounter

in the United States, and are thus directly at odds with LifeScan's reputation for providing

reliable, high-quality and safe ONETOUCH products.  Accordingly, as consumers are likely to

associate Defendants' Gray Market ONETOUCH Test Strips with Plaintiffs and with the

authorized U.S. ONETOUCH Test Strips, such material differences are likely to create a

negative impression of the U.S. ONETOUCH Test Strips among United States consumers and

tarnish or otherwise harm LifeScan's reputation and goodwill.

32.     The distribution and sale by Defendants of such materially different Gray Market

ONETOUCH Test Strips is likely to undermine Plaintiffs' reputation for producing high-quality

products, as purchaser or consumers are likely to be confused by the presence of the

ONETOUCH Marks on such products, and may therefore associate any deficiencies in the Gray

Market ONETOUCH Test Strips with Plaintiffs and the U.S. ONETOUCH Test Strips.

33.     Upon information and belief, Defendants were well aware of the fame and strong

goodwill associated with the ONETOUCH Marks and Plaintiffs' exclusive rights in the

ONETOUCH Marks when they began to import, distribute, and/or sell Gray Market

ONETOUCH Test Strips in the United States, and, therefore, Defendants intended to trade on the

strong reputation, goodwill, and fame of the ONETOUCH Marks.

34.     Due to Defendants' wrongful acts as set forth above, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss and damage to their rights in and to the ONETOUCH Marks.

35.     In addition, the consuming public will continue to be harmed by the confusion caused by Defendants' distribution and/or sale of the Gray Market ONETOUCH Test Strips and by the potential health and safety risks caused by Defendants' actions.

## COUNT I
## Federal Trademark Infringement
## 15 U.S.C. §1114(1)

36.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

37.     Plaintiff J&J is the owner of all right, title and interest in and to the ONETOUCH Marks (as set forth above) and Plaintiff LifeScan is a licensee of the ONETOUCH Marks and is the manufacturer and distributor of the ONETOUCH Test Strips.

38.     Defendants, without authorization, have imported into the United States, and/or distributed and/or sold in the United States, Gray Market ONETOUCH Test Strips featuring the ONETOUCH Marks, which products are materially different from the U.S. ONETOUCH Test Strips authorized by Plaintiffs for sale in the United States, and such actions are likely to cause confusion, or to cause mistake or to deceive.

39.     Defendants' acts have been committed deliberately and willfully, with knowledge of Plaintiffs' exclusive rights and goodwill in the ONETOUCH Marks, and of the infringing nature of the mark when used in connection with the Gray Market ONETOUCH Test Strips, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

40.     As a result of Defendants' trademark infringement, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss and damage to their rights in and to

the ONETOUCH Marks, as well as the goodwill associated therewith, for which they have no adequate remedy at law.

41.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, and business opportunities as a result of their acts of infringement.

42.     As the acts alleged herein constitute infringement of the ONETOUCH Marks under 15 U.S.C. § 1114(1), and as Plaintiffs have no adequate remedy at law, Plaintiffs are entitled to injunctive relief as well as to Defendants' profits and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and to reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117(b).

## COUNT II
### Federal Unfair Competition
### 15 U.S.C. § 1125(a)(i)(A)

43.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

44.     Defendants have, without authorization, imported into the United States and/or distributed and/or sold in the United States, Gray Market ONETOUCH Test Strips featuring the ONETOUCH Marks, which products are materially different from the U.S. ONETOUCH Test Strips authorized by Plaintiffs for sale in the United States and such use is likely to cause confusion, or to cause mistake and/or to deceive as to the affiliation, connection or association of Defendants with Plaintiffs, and  as to the origin, sponsorship or approval by Plaintiffs of Defendants' Gray Market ONETOUCH Test Strips and the commercial activities related to Defendants' Gray Market ONETOUCH Test Strips.

45.     Defendants' acts have been committed with knowledge of Plaintiffs' exclusive common law rights and goodwill in the ONETOUCH Marks, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive.

46.     Plaintiffs have suffered and, if Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and damage to their rights in and to the ONETOUCH Marks and the goodwill associated therewith for which Plaintiffs have no adequate remedy at law.

47.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, and business opportunities as a result of its acts of infringement.

48.     As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and as Plaintiffs have no adequate remedy at law, Plaintiffs are entitled to injunctive relief and to Defendants' profits and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and to reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117(b).

**COUNT III**
**Importation of Goods Bearing Infringing Marks**

49.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

50.     By illegally importing Gray Market ONETOUCH test strips from foreign countries with the intent of inducing diabetic consumers into believing that the products are authorized for resale in the United States, Defendants have violated 15 U.S.C. § 1124.

51.     Plaintiffs have been, and continue to be, damaged by Defendants' activities and conducts.  Defendants have profited thereby and, unless their conduct is enjoined, Plaintiffs' reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.  Accordingly, Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116.

**COUNT IV**
**Unfair and Deceptive Trade Practices Under Massachusetts General Laws Chapter 93A**

52.     Plaintiffs incorporate each paragraph of this Complaint as if fully set forth herein.

14

53.     Defendants are engaged in the conduct of trade and commerce within the meaning of G.L.c. 93A.

54.     Defendants' acts and practices described above constitute unfair methods of competition and/or unfair or deceptive acts or practices declared unlawful by G.L.c. 93A, § 2. and were committed by Defendants in knowing and willful violation thereof.

55.     Defendants' conduct, as described above, has caused and will cause irreparable injury to Plaintiffs and, unless said acts are restrained by this Court, such conduct will continue and Plaintiffs will continue to suffer irreparable injury.

56.     Plaintiffs have no adequate remedy at law.

57.     Defendants' conduct described above has harmed Plaintiffs' reputation and has caused damage to Plaintiffs in an amount to be determined.

58.     Defendants' conduct described above has unlawfully enriched and benefited Defendant in an amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.     That the Court enter judgment that Defendants' actions have violated and, unless enjoined, will continue to violate the Plaintiffs' rights under Section 32 and Section 43(a) of the Lanham Act and the statutory and common laws of the Commonwealth of Massachusetts.

2.     That the Court enter judgment that Defendants have competed unfairly with Plaintiffs as set forth in this Complaint, in violation of Plaintiffs' rights under the Lanham Act and the statutory and common laws of the Commonwealth of Massachusetts.

3.      That the Court preliminarily and permanently enjoin and restrain Defendants and

their owners, directors, officers, agents, servants, employees, subsidiaries, affiliates, and all

persons acting in concert or participating with Defendants from:

      a.      distributing, using, selling or offering for sale in the United States Gray
           Market ONETOUCH Test Strips;

      b.      otherwise competing unfairly with Plaintiffs in any manner;

      c.      conspiring with, aiding, assisting or abetting any other person or business
           entity from engaging in or performing any of the activities referred to in
           subparagraphs (a) and (b), above.

4.      That the Court order Defendants and their owners, directors, officers, agents,

servants, employees and all persons acting in concert or participating with Defendants to deliver

up for destruction all Gray Market ONETOUCH Test Strips or otherwise infringing articles and

materials in their possession or control.

5.      That the Court order Defendants to file with the Court and to serve on counsel for

Plaintiffs, within thirty (30) days after the entry and service on Defendants of an injunction, a

report in writing and under oath setting for the in detail the manner and form in which

Defendants have complied with the foregoing injunction provisions.

6.      That the Court order an accounting and render judgment against Defendants for

an amount equal to treble all profits received from their unlawful acts.

7.      That the Court enter judgment in favor of Plaintiffs for all damages sustained on

account of Defendants' trademark infringement and that such damages be trebled pursuant to

Section 35 of the Lanham Act, 15 U.S.C. § 1117(a) and G.L.c. 93A, § 11.

8.      That Plaintiffs be awarded their attorneys' fees and costs incurred in this action

pursuant to 15 U.S.C. § 1117(a) and G.L.c. 93A, § 11.

9.      For such other and further relief as the Court deems just and equitable.

Dated:    February 18, 2014                **JOHNSON & JOHNSON and**
                                           **LIFESCAN, INC.,**

                                           By their attorneys,


                                           ___/s/ Mark Schonfeld_____
                                           Mark Schonfeld
                                           BBO# 446980
                                           BURNS & LEVINSON LLP
                                           125 Summer Street
                                           Boston, MA  02110
                                           Telephone:      (617) 345-3000
                                           Facsimile:      (617) 345-3299
                                           eMail:          mschonfeld@burnslev.com